

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed October 13, 2023**

**United States Bankruptcy Judge**

___

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| WILLIAM GLENN JOHNS, | § | CASE NO. 21-60010-rlj7 |
| | § | |
| Debtor. | § | |

## MEMORANDUM OPINION AND ORDER

The Court addresses the motion of the Trustee and the Rutan Parties asking that Debtor's Exhibits 35 and 59 be stricken.[1] ECF No. 347.[2] The two exhibits are unrelated. Exhibit 35 is a spreadsheet prepared by Shanell Smith that allocates the money held in an account labeled the American Management Trust bank account.[3] According to Smith's testimony, the American Management Trust bank account holds the funds for various entities and Exhibit 35 is offered to explain that. Exhibit 59 is a promissory note for $576,000 from America South Investment Trust to R I Account Trust. The promissory note was provided to characterize the deposit of a large

---

[1] The Trustee is Roddrick Newhouse, the appointed Chapter 7 trustee in this bankruptcy case. Integral 4RMT, LLC and Dave and Michelle Rutan (collectively, "Rutan Parties") are creditors of the debtor, William Johns, and are aligned with the Trustee in objecting to Johns's exemption claim to a self-directed Roth IRA. Trial on the objection was held on May 31, June 1, June 13, June 14, July 25, and August 2, 2023.
[2] "ECF No." refers to the numbered docket entry in the Court's electronic case file for Case No. 21-60010, unless otherwise stated.
[3] Shanell Smith manages the American Management Trust bank account, where funds of the Carswell Cherokee Trust are deposited. Debtor's self-directed Roth IRA owns a 49% interest in Carswell Cherokee Trust.

sum of money into the America South Investment Trust account. The Trustee and Rutan Parties contend the deposit came from the sale of the Winona Beach Resort, a Sheen Foundation 51 Trust property (for which Johns serves as trustee).[4]

I.

A. **The American Management Trust Account**

Related to Exhibit 35 is the American Management Trust bank account, which is a tool at Smith's disposal for managing the property of Carswell Cherokee Trust. The name of the account is "American Management Trust dba Taylor Repo and Trust Services." Smith testified that the account was opened to manage Carswell Cherokee Trust's income. But income and funds from Carswell Cherokee Trust properties are not the only source of the account's deposits. Smith also makes mortgage payments from the American Management Trust account on property where Debtor stays for 3 to 4 months out of the year—if those payments are made with funds that are traceable to Carswell Cherokee Trust, the question arises whether such payments are a prohibited transaction. Smith maintains, however, that the mortgage payments were made with funds traceable to other entities, despite being made from a commingled account.

Smith's testimony about the American Management Trust account contains inconsistencies. She first represented that American Management Trust was a limited liability company that is in the business of managing trust properties. But the evidence reveals that American Management Trust was never incorporated. It is effectively just the name for an account out of which Smith purports to run a bookkeeping service for numerous entities, all at the behest of Terrell Sheen.

---

[4] For this Memorandum, the references to American Management Trust, America South Investment Trust, R I Account Trust, and Sheen Foundation 51 Trust serve to identify the perplexing collection of trusts, entities, or accounts that are part of an elaborate scheme put together and orchestrated by an individual, Terrell Sheen.

B.   **Winona Beach Sale**

Exhibit 59 touches on another point of contention, which is Johns's frequent characterization of transactions as loans. The specific loan at issue here is, at first glance, unrelated to Johns's bankruptcy, but the Trustee and Rutan Parties contend otherwise.

Johns has a business associate and friend, Terrell Sheen. The two have an extensive history whereby Sheen provides capital for investments that Johns finds for their mutual benefit.

One investment of Sheen's (and, per the Trustee and Rutan Parties, for Johns as well) is the Winona Beach Resort in Washington state. According to Johns's testimony, a trust, Sheen Foundation 51 Trust, owned Winona Beach Resort which was managed by an entity, TSU Control, LLC.[5] Johns testified he served as the trustee of Sheen Foundation 51 Trust and that he was paid by TSU Control to manage the Winona Beach Resort property. Johns maintained that when the property was sold, he received nothing from the sale.[6] He then stated that, to his knowledge, no proceeds of the Winona Beach sale went to America South Investment Trust.[7]

America South Investment Trust received $575,900.09 shortly after the sale of the Winona Beach Resort.[8] *See* Trustee Ex. 159 at 106; Trustee Ex. 163 at 111, 131, 133, & 166–68. Johns is signatory on the documents indicating that proceeds from the sale would be directed to America South Investment Trust. Trustee Ex. 163 at 133.

---

[5] For the years 2018, 2019, and 2020, Johns is listed as a "governor" of TSU Control in annual business reports filed with the Washington Secretary of State's office. Trustee Ex. 150. Johns testified TSU Control is a Texas LLC; TSU Control had to file reports that list an authorized agent for the purposes of acquiring a liquor license in Washington state. Johns stated that TSU Control still manages properties owned by Sheen Foundation 51 Trust.

[6] The title company's documents indicate that the first Purchase & Sale Agreement was entered in September 2020. Trustee Ex. 163 at 14.

[7] Smith testified that she is the trustee of America South Investment Trust and Johns's niece is the beneficiary of that trust.

[8] The America South Investment Trust bank account reflects a $575,900.09 deposit on March 17, 2021. Trustee Ex. 159 at 106. The settlement statement for the Winona Beach Resort sale was mailed to Johns on February 26, 2021 and included a check for $575,900.09. Trustee Ex. 163 at 166–68.

C.  **Discovery Orders**

The most recent discovery complications—growing from a series of three motions to compel discovery filed by the Trustee and Rutan Parties—combined with the factual background laid out above create the basis for the underlying motion to strike.[9]  ECF Nos. 273, 275 & 277.

    *i.*    *Motion to Compel Johns to Produce Documents*

One motion to compel was directed to Johns.  ECF No. 275.  Request No. 22 sought: "Any and all Excel Spreadsheets maintained by Shannell Smith relating to transactions in American Management Trust Account … including, but not limited to the Excel Spreadsheets referred to by Shanell Smith in her deposition."  ECF No. 275, Ex. A.  Relevant to Debtor's Exhibit 59 is Request No. 8: "All documents relating to the America South Investment Trust, including … documents identifying the corpus of the trust, … documents reflecting any conveyances of assets into the trust, [and] documents identifying the liabilities of the trust … ."  ECF No. 275, Ex. A.

Johns opposed the motion to compel.  Hearing was held on the motion on May 4, 2023.  On May 23, 2023, the Court entered an order that denied the motion in-part and granted it in-part.  ECF No. 313.  By its order, the Court denied the motion to compel Johns's production of documents related to America South Investment Trust under Request No. 8 because there was no evidence that he had any control of that trust.  *Id*. at 2 & 4.  But the Court ordered Johns to produce documents "for trusts for which he is a beneficiary … ."  *Id*. at 5.  Johns, being one of the ultimate beneficiaries of Carswell Cherokee Trust, was required to produce the documents under Request No. 22—which included Debtor's Exhibit 35.

---

[9] All three motions to compel were filed on April 26, 2023.

Notably, Debtor's Exhibit 35 was provided when the parties exchanged exhibits before trial—on May 19, 2023. ECF No. 347 ¶ 15. Debtor's Exhibit 35 was, therefore, actually provided to the Trustee and Rutan Parties prior to the Court entering its order compelling production on May 23, 2023.

    *ii.    Motions to Compel Smith and Anderson*

The Trustee and Rutan Parties also sought to compel Smith and Anderson to produce a number of documents.[10] ECF Nos. 273 & 277. Request No. 22 of the motion makes the same request of Smith and Anderson as did Request No. 22 of the above motion on Johns—it requests the Excel spreadsheets maintained by Smith relating to transactions in the American Management Trust account. ECF No. 273, Ex. A; ECF No. 277, Ex. A. Likewise, Request No. 8 is the same as well; it requests documents related to "America South Investment Trust, including … documents identifying the corpus of the trust, … documents reflecting any conveyances of assets into the trust, [and] documents identifying the liabilities of the trust … ." *Id.*

Smith and Anderson responded that they cannot be forced to produce the documents by way of a motion to compel under Rule 34 because they are non-parties to Johns's bankruptcy case.[11] ECF Nos. 281 & 282.

The Court heard the matter on May 4, 2023. And on May 23, 2023, the Court issued an order directing "Anderson and Smith to produce documents … ." ECF No. 312.

Smith and Anderson timely filed a notice of appeal and motion for leave to appeal. ECF Nos. 329 & 330. On June 26, 2023, the District Court denied leave to appeal. ECF No. 337.

---

[10] Brian Anderson is the trustee of Carswell Cherokee Trust, and Smith manages Carswell Cherokee Trust.
[11] Rule 34 of the Federal Rules of Civil Procedure applies to adversary proceedings through Bankruptcy Rule 7034, which is applicable to contested matters through Bankruptcy Rule 9014.

## II.

A.   **Debtor's Exhibit 35**

The effects from the tedious discovery disputes rippled through the trial when Johns moved to admit his Exhibit 35. It is a spreadsheet that purports to allocate money within the American Management Trust bank account to each "entity" that "owns" the money. The bank account, originally opened for Carswell Cherokee Trust, is a commingled account with deposits from multiple sources thereby making it impossible to tell, from the bank statements, what entity should be credited with payments made out of the account. *See* Trustee Ex. 153. Debtor's Exhibit 35 attempts to solve this problem.

The Trustee and Rutan Parties cry foul, arguing that Johns shouldn't be able to use this evidence when it wasn't produced in discovery. At trial, the Court admitted the exhibit but expressly permitted the Trustee and Rutan Parties to file a motion to strike.

First, although Exhibit 35 is a spreadsheet for an account that was represented to the Court as an account for managing funds from Carswell Cherokee Trust, no funds in the spreadsheet are attributed to Carswell Cherokee Trust.

Next, the accuracy and veracity of the spreadsheet is questioned. The Trustee and Rutan Parties compared the American Management Trust bank account statements with the entries in Exhibit 35 and cast doubt on whether the spreadsheet entries were supported by bank statements.[12] Smith, while on the stand, could not find many of the spreadsheet entries in the bank account statements. But upon further review of Exhibit 35 after trial, it appears as though

---

[12] In their brief, submitted in lieu of closings, the Trustee's and Rutan Parties' appendices include two reports analyzing Debtor's Exhibit 35: the first report highlights the "mathematical errors" and the second purportedly "correct[s] all errors" in Exhibit 35. ECF No. 355. Johns filed a motion to strike that Appendix; the Trustee and Rutan Parties responded; and, most recently, Johns replied. ECF Nos. 357, 358, & 359. The motion to strike those portions of the post-trial appendix will be addressed separately.

the questions and answers might misconstrue the spreadsheet, which is problematic considering Smith claimed to create the spreadsheet but could not adequately explain the internal "transactions" within the account. For example, the Trustee and Rutan Parties questioned where the second line item on the first page of Exhibit 35 came from; that item identifies $30,000 "From AMFT" going into Taylor Blue Heron Trust on January 1, 2020.[13] In addition to maintaining separate accounts, both Taylor Blue Heron Trust and AMFT deposited funds in the American Management Trust account, and both trusts are reflected on Exhibit 35. The Trustee and Rutan Parties directed Smith's attention to the January 2020 bank statement for the American Management Trust account where no $30,000 deposit is identified. *See* Trustee Ex. 153 at 287–90. Nor is a $30,000 transfer reflected in the AMFT bank account in January 2020. *See* Trustee Ex. 157 at 1404–62. Now that is where the line of questions ended during the trial; however, the $30,000 transfer was actually documented within Exhibit 35—an explanation Smith probably should have been able to provide to the Court. So, within the AMFT section of the exhibit is the line item that specifies on January 1, 2020, $30,000 was "Move[d] to Blue Heron." Debtor Ex. 35 at 22.

That is not to say the spreadsheet is clear—again, Carswell Cherokee Trust funds are not accounted for in the account that is purported to be for Carswell Cherokee Trust.[14]

**B.      Debtor's Exhibit 59**

On the final day of trial, Johns moved to admit his Exhibit 59, which is a promissory note where America South Investment Trust promises to repay R I Account Trust $576,000.[15] The

---

[13] AMFT and Taylor Blue Heron Trust are two trusts for which Johns claims he is not the trustee or beneficiary. The Taylor Blue Heron Trust's documents and an affidavit submitted by Sheen support Johns's position. Debtor Ex. 55; Trustee Ex. 151.

[14] In their brief, submitted in lieu of oral closing arguments, the Trustee and Rutan Parties critique Debtor's Exhibit 35. ECF No. 355 at 21–22.

[15] Smith stated that R I Account Trust is another of Sheen's trusts.

note bears interest at 5% per annum, carries a five-year term, and states that the full balance is due on the note's termination date. Debtor Ex. 59. The purpose of the note is to contradict other evidence that indicates America South Investment Trust received proceeds from the sale of Winona Beach Resort by showing that America South Investment Trust received funds through a loan from another trust.

## III.

## DISCUSSION

The Trustee and Rutan Parties contend that Debtor's Exhibits 35 and 59 should be stricken because of Johns's failure to comply with the Court's orders.[16] ECF No. 347. They direct the Court to Rule 37 as the avenue by which the Court may strike those exhibits as a sanction for violating the Court's discovery orders. *Id*. at 6 & 8–9. Johns raises several arguments in opposition to the motion. He contends that the Trustee and Rutan Parties are judicially estopped from advancing their argument, that Smith's discovery violations do not impact the admissibility of evidence offered by Johns, and that Johns had no authority to produce Exhibit 59.

Rule 37(b)(2)(A) permits courts to impose a sanction when a party fails to comply with a discovery order. *Law Funder, L.L.C. v. Munoz*, 924 F.3d 753, 758 (5th Cir. 2019). The Trustee and Rutan Parties ask the Court to sanction Johns by striking his Exhibits 35 and 59. Courts have broad discretion in forming a sanction. *Law Funder*, 924 F.3d at 758. The sanction is reviewed for an abuse of discretion. *Id*. (citing *United States v. $49,000 Currency*, 330 F.3d 371, 376 (5th Cir. 2003)). The factual underpinnings for the sanction are reviewed for clear error. *Id*.

---

[16] But Debtor's Exhibit 35 was provided to the Trustee and Rutan Parties before the Court issued its order.

(citing *Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 619 F.3d 458, 460 (5th Cir. 2010)).

For lesser sanctions, like those sought here—sanctions that do not, by themselves, end litigation—the court must determine the sanctions are "just" and "related to the particular 'claim' which was at issue in the order to provide discovery." *Compaq Comput. Corp. v. Ergonome Inc.*, 387 F.3d 403, 413 (5th Cir. 2004) (quoting *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982)).[17]

Courts in the Fifth Circuit have used a four-part test to determine if the exclusion of evidence is an appropriate sanction for violating a discovery order. *Paz v. Brush Engineered Materials Inc.*, 555 F.3d 383, 390 (5th Cir. 2009) (citing *Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996)). The test considers: (1) the explanation for the party's failure to comply with the discovery order, (2) prejudice to the opposing party, (3) the possibility of curing the prejudice by granting a continuance, and (4) the importance of the evidence.[18] *Barrett*, 95 F.3d at 380.

**Debtor's Exhibit 35**

Exhibit 35 falls within the Court's orders that required Johns, Smith, and Anderson to produce it—as a spreadsheet that accounts for funds within the American Management Trust bank account. ECF Nos. 312 & 313.

---

[17] For litigation-ending sanctions, the court must find: "(1) the discovery violation was committed willfully or in bad faith; (2) the client, rather than counsel, is responsible for the violation; (3) the violation 'substantially prejudice[d] the opposing party'; and (4) a lesser sanction would not 'substantially achieve the desired deterrent effect.'" *Law Funder*, 924 F.3d at 758–59 (quoting *FDIC v. Conner*, 20 F.3d 1376, 1380–81 (5th Cir. 1994)).

[18] Although *Barrett*'s test was initially applied to the exclusion of expert testimony, the test may be applied to other forms of evidence. *Hill v. New Orleans City*, No. 13-2463, 2016 WL 4180809, at *4, 2016 U.S. Dist. LEXIS 103960, at *13 (E.D. La. Aug. 8, 2016); *see Paz*, 555 F.3d at 390.

Is it just to strike Exhibit 35? As previously stated, it was provided to the Trustee and Rutan Parties before the Court entered its order and thus cannot violate the Court's order.[19] The Trustee and Rutan Parties are not prejudiced by the admission of Exhibit 35. To the contrary, on its face, Exhibit 35 and the related testimony undermine its accuracy. It is unclear how the reliability of the document can be measured when its creator cannot explain its workings. Additionally, the spreadsheet does not account for *Carswell Cherokee Trust* funds, which is problematic. As for the third factor, any prejudice that does exist will not be cured by a continuance. Last, the evidence could be important to Johns, but its accuracy—or lack thereof—diminishes its significance.

The Court can weigh the significance of Exhibit 35.

**Debtor's Exhibit 59**

As discussed in more detail above, Debtor's Exhibit 59 is a promissory note where America South Investment Trust promises to repay R I Account Trust for a $576,000 loan. Johns provided the exhibit on the last day of trial, shortly after Smith, the trustee of America South Investment Trust, testified that she had no recollection of $500,000 being deposited into an America South Investment Trust account.

Johns's response to the motion to strike explains that he had no authority over America South Investment Trust's records—Johns is neither its beneficiary nor trustee. ECF No. 351 at 3. His response does not, however, address Smith's control over the document. The Court's order required her to produce documents related to "America South Investment Trust, including … documents identifying the corpus of the trust, … documents reflecting any conveyances of assets

---

[19] The Trustee and Rutan Parties state they received Debtor's Exhibit 35 when the parties exchanged exhibits on May 19, 2023. ECF No. 347 at 5. The Court entered its orders compelling Johns, Anderson, and Smith on May 23, 2023. ECF Nos. 312 & 313.

into the trust, [and] documents identifying the liabilities of the trust … ." *See* ECF No. 312 at 5; ECF No. 277, Ex. A. At various stages, counsel, who represents both Johns and Smith, made clear that he disagrees with the Court's order that compelled Smith to produce documents under Rule 34 on the grounds that Smith is not a party to the main bankruptcy case. *See* Motion for Leave to Appeal, ECF No. 330. It is unclear to what extent the Trustee and Rutan Parties are prejudiced by construing the deposit to be a payment versus a loan. Moreover, the closing documents associated with the source of the funds indicate that funds were originally going to be wired to the America South Investment Trust account, but handwritten directions instruct the title company to send a check instead.[20] Trustee Ex. 163 at 131. In any event, the story is convoluted. Exhibit 59's importance is questionable.

Also in his response, Johns states that he should not be punished for Smith's possible violations of the Court's order. ECF No. 351 at 3. Johns has no authority—or at least no authority has been demonstrated here—to demand that Smith provide documents of America South Investment Trust. But it is also important to note that the Court's order compelling Johns explicitly denied the Trustee's and Rutan Parties' Request No. 8 (which requested documents related to America South Investment Trust). ECF No. 313. Thus, any sanction for a discovery violation related to Exhibit 59 would be a sanction for Smith's or Anderson's conduct.

Upon consideration of the facts and factors, the Court finds they fall short of warranting exclusion of Exhibit 59. The Court is capable of considering the evidence; the Trustee and Rutan Parties are not prejudiced by Debtor's Exhibit 59.

---

[20] An early draft of the settlement statement directs the proceeds go to "ROTHIRA," but that designation is marked out and replaced with "American South." Trustee Ex. 163 at 111. In later versions, the settlement statement directs the balance of the sale proceeds to "America South Investment Trust." *Id*. at 133.

## IV.

### Debtor's Remaining Arguments

Johns argues that judicial estoppel bars the Court's striking the exhibits, that Johns should not be punished for any discovery violation committed by Smith, and that he had no ability to produce Exhibit 59. He grounds his judicial estoppel argument on representations made by the Trustee and Rutan Parties to the district court when Smith filed her motion for leave to appeal the Court's order compelling production. *See* ECF No. 351 at 1–3. There, as recited by Johns, the Trustee and Rutan Parties argued that leave to appeal be denied because there was no harm to redress, but now they argue they were harmed by violations of the discovery order. *See id*. Their positions reflect some inconsistency. But upon reviewing the Trustee's and Rutan Parties' response to Smith's motion for leave to appeal, they emphasized that no final order—i.e., a contempt order—had been entered to redress on appeal as opposed to any harm they suffered. *See* Case 6:23-cv-00034-C, ECF No. 4. And they also state that if any prejudice was caused by Smith's failure to comply with this Court's order, they are the parties prejudiced. *Id*. at 6.

As a last point on judicial estoppel, the standards are different for Smith's motion for leave to appeal an interlocutory discovery order and the Trustee's and Rutan Parties' motion to strike Johns's exhibits. To decide whether to grant motions for leave to appeal an interlocutory order, courts look for a controlling issue of law, a substantial ground for a difference of opinion, whether an immediate appeal would materially advance the termination of litigation, and if the appeal would save judicial time and resources. *See* 28 U.S.C. § 1292(b); *Balestri v. Hunton & Williams, LLP (In re Hallwood Energy, L.P.)*, No. 3:12-CV-1902, 2013 WL 524418, at *2, 2013 U.S. Dist. LEXIS 18165, at *5–6 (N.D. Tex. Feb. 11, 2013); *Compaq Comput. Corp. v. Ergonome Inc.*, No. H-97-1026, 2001 WL 34104829, at * 2, 2001 U.S. Dist. LEXIS 23487, at *8

(S.D. Tex. June 26, 2001).  But, as discussed above, determining sanctions for discovery violations under Rule 37(b)(2)(A) requires the court to decide what sanctions are "just" and "related to the particular 'claim' which was at issue in the order to provide discovery."  *Compaq Comput. Corp.*, 387 F.3d at 413.  Any apparent inconsistencies in the Trustee's and Rutan Parties' position vanish given the context of their arguments.  Judicial estoppel does not bar the Trustee and Rutan Parties from seeking to strike Debtor's Exhibits 35 and 59.

Johns's remaining two arguments are related and have teeth: that he should not be punished for Smith's failure to comply with a discovery order, and that Johns has no authority to compel Smith to provide America South Investment Trust's documents so that *he* could comply with the Court's orders.  The bite of the argument is considered above in determining if exclusion is a just sanction.  *See supra* p. 11.

### CONCLUSION AND ORDER

The Court denies the request to strike Debtor's Exhibits 35 and 59.  Exclusion is not just, and the Trustee and Rutan Parties are not prejudiced.  The Court considers inconsistencies when evaluating the evidence.  It is, therefore,

ORDERED that the motion of the Trustee and the Rutan Parties to strike Debtor's Exhibits 35 and 59 is denied.

### End of Memorandum Opinion and Order ###