

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed November 22, 2024**

**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| WILLIAM GLENN JOHNS, | § | CASE NO. 21-60010-rlj7 |
| | § | |
| Debtor. | § | |

## MEMORANDUM OPINION AND ORDER

Roddrick B. Newhouse, the chapter 7 trustee in this case, moved to approve the

Litigation Purchase and Funding Agreement (Agreement) between him and David Rutan and

Rutan's company, Quadratics Quadrant, LLC (Quadratics). The purpose of the Agreement is to

provide funding for the Trustee for litigation claims of the bankruptcy estate. The claims concern

the collection of assets under the Debtor's, Mr. Johns's, IRA that was found to be non-exempt by

the Court.[1] The Debtor and Intervening Parties[2] (collectively, Objecting Parties) oppose the

motion and ask the Court to deny approval.

---

[1] The Court issued its Memorandum Opinion and Order on March 26, 2024 finding that Johns's IRA did not qualify as exempt and thus the IRA and its assets are property of the bankruptcy estate that can be liquidated for the benefit of the estate's creditors.

[2] The "Intervening Parties" are: Brian Anderson, Individually and as Trustee of the Carswell Cherokee Trust ("Anderson"); Shanell Smith, Individually and as Trustee of the Southeast Financial Trust ("Smith"); Terrell Sheen ("Sheen"); Quest Trust Company d/b/a Quest IRA LLC successor by merger to Quest IRA Inc. FBO Terrell Sheen Roth IRA; and Quest Trust Company d/b/a Quest IRA LLC successor by merger to Quest IRA Inc. FBO Cathy Sheen Roth IRA.

1

The Court's jurisdiction of this matter arises under 28 U.S.C. § 1334(b); this matter is a

core proceeding under 28 U.S.C. § 157(b)(2)(A) & (B).

## I.

David Rutan is the primary creditor in this case. He has filed proofs of claim totaling

almost $5.5 million.[3] As set forth in the Trustee's motion, the Agreement provides:

a. Quadratics will pay the Trustee $125,000.00 to purchase a 25% interest in all property of the estate, other than the funds paid to the Trustee under this Agreement;

b. David Rutan will pay $200,000.00 to the bankruptcy estate to fund a portion of the administrative expenses previously incurred by the Trustee in objecting to the Debtor's exemptions.

c. David Rutan, at his discretion, will fund future fees and expenses associate[d] with prosecuting the Estate Claims and incurred in attempting to recover and liquidate IRA Assets;

d. $300,000.00 of the total amount of $325,000.00 which is funded by Quadratics and David Rutan shall be allocated to the payment of allowed interim fee applications of the Trustee, Trustee's general counsel, Trustee's special counsel and for any administrative expense claim asserted by the Rutans or their counsel for making a substantial contribution to the bankruptcy estate;

e. Any litigation proceeds from the Estate Claims and/or the avoidance claims will be paid:

   i) First to the Trustee to pay all administrative claims including legal fees and expenses incurred after the date of this agreement and incurred in connection with prosecuting the Estate Claims, recovering and liquidating IRA assets, and recovering and liquidating other assets of the bankruptcy estate, as allowed by the Court;

   ii) Second, to Rutan as reimbursement of all legal fees and expense paid by Rutan related to this Agreement, subject to court approval; and

   iii) Third, 25% of the remaining funds to Quadratics in repayment of its 25% ownership interest in property of the estate;

   iv) Fourth, the remaining proceeds will be paid to the Trustee to be administered in accordance with the provisions of the Bankruptcy Code.

Trustee's Mtn. at 4–5 [ECF No. 430].

---

[3] The Rutans filed two proofs of claim: one in the amount of $1,948,306.09 and another in the amount of $1,927,423.92. Case No. 21-60010, Claim Nos. 5-2 and 6-1. David Rutan signed a third proof of claim for an entity named Integral 4RMT, LLC for $1,617,410.93. *Id.*, Claim No. 7-1.

A.

The Objecting Parties contend the Agreement fails to advance the Trustee's primary duty to expeditiously reduce estate assets to money. They say the Trustee should have accepted an $800,000 offer from Terrel Sheen to settle all issues concerning the IRA and its assets. (Sheen and his proxies ultimately control the assets of the IRA.) The Court agrees that further litigation will not foster an expeditious administration of estate assets. But this case has never been on a fast track. The multi-tiered IRA that Johns claimed as exempt is the source of much litigation. This case is not quickly and efficiently administered. The Court prefers a sale of estate assets but also defers to the Trustee's decision to *not* settle with Mr. Sheen.

Next, the Objecting Parties contend that to the extent the Agreement "allows payment of estate funds to a creditor or a creditor's lawyer who does not also represent the Trustee," it violates §§ 330 and 331 of the Bankruptcy Code. ECF No. 432. These provisions concern the Court's approval of the compensation of a trustee or a professional person employed by the trustee. The Court is not here preemptively approving an administrative claim; no such claim is before the Court or has been sought under § 503 of the Bankruptcy Code.

The Objecting Parties complain of David Rutan having "veto power" given his right under the Agreement to "pre-approve legal work submitted for payment, subject to a 'not unreasonably withheld' standard (except for work by Ms. Eisen)." *Id*. While the Court may not like Rutan's right to withhold funding for litigation, it is not offended by his retaining such right. Such right is simply part of the deal. The party that pays typically has the leverage to control what he pays for.

Last, the Objecting Parties submit that the Trustee and his professionals may not be entitled to compensation because they (or some of them) may not be a "disinterested person" as

3

defined under § 101(14). They then state that the "actions of David Rutan and/or the Rutans against Debtor, Carswell, and others…may constitute torts (such as abuse of process…)";[4] and that because "Ms. Eisen represents David Rutan and the Rutans…she cannot be a 'disinterested person.'" ECF No. 432. The Trustee has obviously determined that the estate has no claim back against Rutan. Johns's bankruptcy schedules do not disclose a claim against Rutan. Of course, if such claim does surface, then Rutan's (and counsel's) disinterestedness could be called into question.

B.

The Objecting Parties state that potential claims asserted by the Trustee are actually claims *of the IRA*. The significance of this point is unclear. The Trustee successfully prosecuted his objection to Johns's exemption claim to his IRA. The obvious next step for the Trustee is to administer the IRA for the benefit of the bankruptcy estate and, particularly, allowed creditors of the estate. The complexity of Johns's IRA has been well documented in decisions rendered by the Court. It is hardly a surprise that its liquidation would not be cheap or easy.

The IRA is the only asset in this case; and the Rutan parties are the only creditors of substance. The bankruptcy estate has no funds with which to pursue liquidation of the IRA's assets. The Trustee has made the business decision to enter into the Agreement with Rutan. The Agreement provides a means to pay a portion of the substantial administrative claims accrued to date and will allow the Trustee to continue his efforts to collect against the IRA and its assets. The offer by Terrell Sheen to purchase the IRA was, in the Trustee's view, inadequate.

---

[4] "Carswell" refers to Carswell Cherokee Trust, which is one of two trusts in which the IRA holds an interest.

II.

A.

The Trustee submits that the Agreement represents the Trustee's sound business judgment and should be approved under §§ 363 and 105 of the Bankruptcy Code. Section 363 concerns the trustee's use, sale, or lease of estate property. While the Trustee is generally requesting the Court to approve the Agreement, the terms of the Agreement include the sale of an interest in the estate and other terms that provide for the funding of litigation by Rutan. As the major creditor in the case, Rutan will potentially benefit from any recoveries resulting from actions taken by the Trustee. The basic question for the Court is whether the Trustee is making a sound business decision through the Agreement. The Court will review the Trustee's decision through the rubric of § 363.

A proposed use, sale, or lease of assets outside of the ordinary course of business during the pendency of a case is governed by § 363(b). *See In re CDX Gas, LLC*, No. 08-37922-11, 2009 WL 1651445, at *2 (Bankr. S.D. Tex. June 9, 2009); 11 U.S.C. § 363(b). "[A] trustee may use, sell or lease property of the estate, other than in the ordinary course of business, only after notice and a hearing." 1 COLLIER INTERNATIONAL BUSINESS INSOLVENCY GUIDE P 4.05 (2024).

The Bankruptcy Code does not define "ordinary course of business." 3 COLLIER ON BANKRUPTCY P 364.02 (16th 2024). The Fifth Circuit has addressed this in the context of credit arrangements and preference payments and has adopted an "objective test" for determining when a credit arrangement is within the ordinary course of business. *See In re Ramba, Inc.*, 437 F.3d 457, 462 (5th Cir. 2006) ("[T]he ordinary business term sets an outer boundary to the parties' practices presenting the question of whether a particular arrangement is so out of line with what others do that it fails to be ordinary.") (quotations omitted); *In re Gulf City Seafoods, Inc.*, 296

F.3d 363, 366 (5th Cir. 2002) ("[W]e hold that a party claiming that payments were made 'according to ordinary business terms' must show that the payments in question fall somewhere in the range of payment practices of the relevant industry."); 1 COLLIER INTERNATIONAL BUSINESS INSOLVENCY GUIDE P 4.05 (2024) ("Generally, the sale of miscellaneous piecemeal property by a trustee would be in the ordinary course. In contrast, the sale of all or substantially all of the assets of the debtor would generally require court approval.").

Section 363(b) concerns property of the estate; § 541 defines property of the estate. *See In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986); 11 U.S.C. § 541. According to § 541, such property includes "[p]roceeds, product, offspring, rents, or profits of or from property of the estate," as well as "[a]ny interest in property that the estate acquires after commencement of the case." 11 U.S.C. § 541(a)(6)–(7). Here, the property to be sold consists of a twenty-five percent interest in all property of the estate, including avoidance claims. Trustee's Mot. ¶¶ 7–8 [ECF No. 430].

Further, the Fifth Circuit has explained that there must be "some articulated business justification for using, selling, or leasing the property outside the ordinary course of business." *In re Cont'l Air Lines*, 780 F.2d at 1226; *see also In re Nature Leisure Times, LLC*, No. 06-41357, 2007 WL 4554276, at *2 (Bankr. E.D. Tex. Dec. 19, 2007); *In re Quality Beverage Co., Inc.*, 181 B.R. 887, 895 (Bankr. S.D. Tex. 1995) ("There must be an articulated business justification, other than appeasement of major creditors, for the use, sale or lease of estate property outside the ordinary course of business."). The Agreement provides a means to partially pay administrative claims incurred in objecting to the debtor's exemptions; it will allow the Trustee to pursue collection of the IRA assets; and it may fund litigation against third parties. The Agreement will

preserve estate resources and shift the risk of litigation from the bankruptcy estate to the creditor that most stands to benefit. Trustee's Mot. ¶ 12 [ECF No. 430].

The standard for approval under § 363(b) is "whether the debtor exercised sound business judgment." *In re 8 W. 58TH St. Hosp., LLC*, No. 14-11524 (SHL), 2017 WL 3575856, at *3 (Bankr. S.D.N.Y. Aug. 4, 2017). Upon appointment, the trustee steps into the shoes of the debtor—thus, the question is whether the trustee exercised sound business judgment by entering the Agreement. *See Ries v. Barton 5 Fam., L.P. (In re Barton)*, No. 23-02002, 2023 WL 8467668, at *2 (Bankr. N.D. Tex. Dec. 6, 2023) (quoting *Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 795 (D.C. Cir. 2010)) ("The commencement of Chapter 7 bankruptcy extinguishes a debtor's legal rights and interests in any pending litigation, and transfers those rights to the trustee, acting on behalf of the bankruptcy estate."); *cf. In re Jim Ross Tires, Inc.*, 379 B.R. 670, 674 (Bankr. S.D. Tex. 2007) (citing *In re Segerstrom*, 247 F.3d 218, 224 (5th Cir. 2001)) ("It is a well-accepted principle that when an entity files for bankruptcy and a trustee is appointed, the trustee 'stands in the shoes' of the debtor.").

The business judgment rule is the "presumption that in making a business decision, the trustee, acting in the stead of the board of directors, will act on an informed basis, in good faith, and in the honest belief that actions to be taken on behalf of the debtor are in the best interest of the debtor, its estate and creditors." 1 COLLIER INTERNATIONAL BUSINESS INSOLVENCY GUIDE P 4.05 (2024); *see also In re TM Vill., Ltd.*, No. 18-32770-BJH, 2019 WL 1004571, at *10 (Bankr. N.D. Tex. Feb. 28, 2019) (quoting *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985)) ("As long as [the sale] appears to enhance a debtor's estate, court approval of a debtor-in-possession's decision to [sell] should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code.")

(alterations in original). "Parties opposing the proposed exercise of a [trustee's] business judgment have the burden of rebutting the presumption of validity." *In re 8 W. 58TH St. Hosp., LLC*, 2017 WL 3575856, at *3.

B.

The Court is satisfied that the Trustee has exercised sound business judgment in entering into the Agreement; the Agreement is proposed in the best interest of creditors and of the bankruptcy estate. The Trustee does not have the funds needed to pursue the collection efforts he deems necessary. The Agreement includes the purchase of an interest in estate property. It otherwise provides for payment of administrative expenses previously incurred, approved attorney's fees of Trustee's attorneys, and potential administrative expense claims asserted by the Rutans. Finally, the Court construes the provisions at part (e)(i) of the Agreement that provide for the distribution of litigation proceeds to be compliant with the priority and distribution scheme required under the Bankruptcy Code. The motion will be approved.

III.

### Order

It is hereby

ORDERED that the Litigation Purchase and Funding Agreement between the Trustee and creditor David Rutan (and his company, Quadratics Quadrant, LLC) is approved.

### End of Memorandum Opinion and Order ###