

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED
THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed January 30, 2025

_____
**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| WILLIAM GLENN JOHNS, | § | CASE NO. 21-60010-rlj7 |
| | § | |
| Debtor. | § | |

## MEMORANDUM OPINION

The chapter 7 trustee, Roddrick B. Newhouse ("Trustee"), moves for approval of the sale and settlement agreement that he has entered into with William Glenn Johns (the debtor), Terrell Sheen, Cathy Sheen, Brian Anderson (individually and as trustee of the Carswell Cherokee Trust), Shanell Smith (individually and as trustee of the Southeast Financial Trust and as trustee of the American Management Trust), Carswell Cherokee Trust, Southeast Financial Trust, and Dennis Grafa (trustee of the WAC Investment Trust). The parties to the agreement will be referred to as the "Parties." Grafa, trustee of the WAC Investment Trust, is the "Purchaser" under the sale and settlement. The sale and settlement is opposed by Integral 4RMT, LLC, David Rutan, and Michelle Rutan (collectively, the "Rutan Parties"). Hearing was held on January 14, 2025.

The Court's jurisdiction of this matter arises under 28 U.S.C. § 1334(b); this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (N), and (O).

I.

The Court will not catalog the events and proceedings that provide the background and context of the settlement as they are carefully spelled out in the Trustee's motion and are not in dispute.

Despite the many parties to the settlement, its terms are simple: Purchaser will pay the Trustee (as representative of the bankruptcy estate) $925,000.00 for *all* non-exempt property of the bankruptcy estate, including all causes of action and potential causes of action of the estate. The Parties will sign mutual releases and dismiss all pending litigation (and appeals) to which they are a party. The pending proceedings that will be dismissed are the Exemption Appeal and the Breach of Fiduciary Duty Adversary Proceeding. A third proceeding, the Discharge Proceeding, is presently on appeal and is not resolved by the settlement because the Rutan Parties are the prosecuting party in such action.[1] The Parties agree that a "bar order" be issued to ensure disposition and cessation of all actions among the Parties.

As a possible alternative to the proposed sale, the Trustee, on the morning of the hearing on this matter, conducted an auction of all estate assets and received a bid from the Rutan Parties[2] of $500,000, coupled with a release of their claims against the estate. As the sole major

---

[1] The "Exemption Appeal" refers to Johns's appeal of the Court's Order denying his claim of exemption for his IRA. *In re Johns*, 658 B.R. 401 (Bankr. N.D. Tex. 2024), *appeal docketed*, No. 6:24-cv-024-H (N.D. Tex. filed April 9, 2024). The "Breach of Fiduciary Duty Adversary Proceeding" refers to a complaint filed by the Trustee against the Parties to the settlement here; the complaint asserts, among other things, that the defendants breached their fiduciary duties. Adv. No. 22-06001, ECF No. 1 (This proceeding is set for Trial Docket Call on June 5, 2025.). The "Discharge Proceeding" refers to the Rutans' appeal of the Court's Order denying the Rutans' complaint, which objected to Johns obtaining a discharge under 11 U.S.C. § 727. *Rutan v. Johns*, No. 22-06000, 2024 WL 44314832 (Bankr. N.D. Tex. Sept. 25, 2024), *appeal docketed*, No. 6:24-cv-074-H (N.D. Tex. filed Oct. 15, 2024).

[2] The Court is unclear if all of the Rutan Parties made the bid.

creditor in the case, holding judgments against the debtor that exceed $5 million, the Rutan Parties would receive no part of the $500,000 as a dividend from the bankruptcy estate. They would then be free to prosecute all claims they contend the estate now holds. The Trustee rejected such bid and proceeded with hearing on the settlement.

II.

A.

Both the Trustee and the Rutan Parties look to the business judgment standard as the guide for assessing whether the Trustee's motion should be approved.

Bankruptcy Rule 9019 provides that on "the trustee's motion and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). The Court may approve the settlement here if it is fair and equitable and in the best interest of the estate. *See In re Cajun Elec. Power Coop., Inc.*, 119 F.3d 349, 355 (5th Cir. 1997). "Compromises are favored in bankruptcy" as they minimize litigation costs and promote an efficient administration of the debtor's estate. *In re Idearc Inc.*, 423 B.R. 138, 190 (Bankr. N.D. Tex. 2009).

In assessing whether a settlement is fair and equitable, the Court is guided by the *Cajun Electric* factors:

(1) the probability of success of litigation;

(2) the complexity and likely duration of the litigation; any attendant expense, inconvenience, or delay; and possible problems collecting a judgment;

(3) the interest of creditors with proper deference to their reasonable views; and

(4) the extent to which the settlement is truly the product of arm's length negotiations.

3

*In re Mirant*, 348 B.R. 725, 739–40 (Bankr. N.D. Tex. 2006) (citing *In re Cajun Elec.*, 119 F.3d at 355–56).

The settlement here is effected by a sale of all the estate's assets. The Court, in assessing the issues, notes that the Trustee's proposed sale of estate assets is considered in accordance with the business judgment standard; the Court is guided to approve the sale so long as it does not "fall beneath the lowest point in the range of reasonableness." *Vaughn v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991). The Court is accorded much discretion; the standards coalesce for both the settlement and the sale.

A trustee may use, sell, or lease property of the estate, other than in the ordinary course of business, only after notice and a hearing. 11 U.S.C. § 363(b). In the course of liquidating the estate's assets, the trustee must exercise independent and reasonable business judgment in order to obtain the highest and best offer and maximize the value of the estate's assets. *See Gluckstadt Holdings, L.L.C. v. VCR I, L.L.C. (In re VCR I, L.L.C.)*, 922 F.3d 323, 326–27 (5th Cir. 2019); *Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253, 263 (5th Cir. 2010) ("A trustee has a duty to maximize the value of the estate [and] must demonstrate that the proposed sale price is the highest and best offer, though a bankruptcy court may accept a lower bid in the presence of sound business reasons, such as substantial doubt that the higher bidder can raise the cash necessary to complete the deal.").

Courts apply the business judgment rule in evaluating a trustee's decisions. *See Off. Comm. of Unsecured Creditors v. Bouchard Transp. Co. (In re Bouchard Transp. Co.)*, 74 F.4th 743, 755 (5th Cir. 2023); *In re Levenson Grp., Inc.*, 613 B.R. 418, 425 (Bankr. N.D. Tex. 2020). The business judgment rule is the presumption that in making a business decision, the trustee,

acting in the stead of the debtor, will act on an informed basis, in good faith, and in the honest belief that actions to be taken on behalf of the debtor are in the best interest of the debtor, its estate, and creditors. *See In re Goodman Networks, Inc.*, No. 22-31641-MVL7, 2024 WL 460478, at *9 (Bankr. N.D. Tex. Feb. 6, 2024); *In re Cooper*, 405 B.R. 801, 812 (Bankr. N.D. Tex. 2009) ("[T]he trustee is a fair, balanced, and experienced…official who can be depended upon to exercise good litigation judgment.").

A proposed sale of assets outside of the ordinary course of business during the pendency of a case is governed by section 363(b). *See In re CDX Gas, LLC*, No. 08-37922-h3-11, 2009 WL 1651445, at *2 (Bankr. S.D. Tex. June 9, 2009); 11 U.S.C. § 363(b).

The Bankruptcy Code does not define "ordinary course of business." 3 COLLIER ON BANKRUPTCY P 364.02 (16th 2024). The Fifth Circuit has addressed this in the context of credit arrangements and preference payments, and has adopted an "objective test" for determining when a credit arrangement is within the ordinary course of business. *See In re Ramba, Inc.*, 437 F.3d 457, 462 (5th Cir. 2006) ("[T]he ordinary business term sets an outer boundary to the parties' practices presenting the question of whether a particular arrangement is so out of line with what others do that it fails to be ordinary.") (quotations omitted); *In re Gulf City Seafoods, Inc.*, 296 F.3d 363, 366 (5th Cir. 2002) ("[W]e hold that a party claiming that payments were made 'according to ordinary business terms' must show that the payments in question fall somewhere in the range of payment practices of the relevant industry."); 1 COLLIER INT'L BUS. INSOLVENCY GUIDE P 4.05 (2024) ("Generally, the sale of miscellaneous piecemeal property by a trustee would be in the ordinary course. In contrast, the sale of all or substantially all of the assets of the debtor would generally require court approval.").

Section 363(b) concerns property of the estate; section 541 defines property of the estate. *See In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986); 11 U.S.C. §§ 363, 541. According to section 541, such property includes "[p]roceeds, product, offspring, rents, or profits of or from property of the estate," as well as "[a]ny interest in property that the estate acquires after commencement of the case." 11 U.S.C. § 541(a)(6)–(7). Here, the property to be sold consists of *all* property of the estate. The potential assets here consist of causes of action for recovery of properties held by downstream trusts within the debtor's self-directed IRA.

Further, the Fifth Circuit has explained that there must be "some articulated business justification for using, selling, or leasing the property outside the ordinary course of business." *In re Cont'l Air Lines*, 780 F.2d at 1226; *see also In re Nature Leisure Times, LLC*, No. 06-41357, 2007 WL 4554276, at *2 (Bankr. E.D. Tex. Dec. 19, 2007); *In re Quality Beverage Co., Inc.*, 181 B.R. 887, 895 (Bankr. S.D. Tex. 1995) ("There must be an articulated business justification, other than appeasement of major creditors, for the use, sale or lease of estate property outside the ordinary course of business."). The sale and settlement provides a means to pay administrative claims incurred in objecting to the debtor's IRA exemption; it liquidates the estate assets; and it avoids further costly and protracted litigation for the estate.

The standard for approval under section 363(b) is "whether the debtor exercised sound business judgment." *In re 8 W. 58th St. Hosp., LLC*, No. 14-11524 (SHL), 2017 Bankr. LEXIS 2194, 2017 WL 3575856, at *3 (Bankr. S.D.N.Y. Aug. 4, 2017). Upon appointment, the trustee steps into the shoes of the debtor—thus, the question is whether the trustee exercised sound business judgment by entering the agreement. *See Ries v. Barton 5 Fam., L.P. (In re Barton)*, No. 23-02002, 2023 WL 8467668, at *2 (Bankr. N.D. Tex. Dec. 6, 2023) (quoting *Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 795 (D.C. Cir. 2010)) ("The commencement of Chapter 7 bankruptcy

6

extinguishes a debtor's legal rights and interests in any pending litigation, and transfers those rights to the trustee, acting on behalf of the bankruptcy estate."); *cf. In re Jim Ross Tires, Inc.*, 379 B.R. 670, 674 (Bankr. S.D. Tex. 2007) (citing *In re Segerstrom*, 247 F.3d 218, 224 (5th Cir. 2001)) ("It is a well-accepted principle that when an entity files for bankruptcy and a trustee is appointed, the trustee 'stands in the shoes' of the debtor.").

The business judgment rule is the "presumption that in making a business decision, the trustee, acting in the stead of the board of directors, will act on an informed basis, in good faith, and in the honest belief that actions to be taken on behalf of the debtor are in the best interest of the debtor, its estate and creditors." 1 COLLIER INT'L BUS. INSOLVENCY GUIDE P 4.05 (2024); *see also In re TM Vill., Ltd.*, No. 18-32770-BJH, 2019 WL 1004571, at *10 (Bankr. N.D. Tex. Feb. 28, 2019) (alterations in original) (quoting *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985)) ("As long as [the sale] appears to enhance a debtor's estate, court approval of a debtor-in-possession's decision to [sell] should only be withheld if the [trustee's] judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code."). "Parties opposing the proposed exercise of a [trustee's] business judgment have the burden of rebutting the presumption of validity." *In re 8 W. 58th St. Hosp.*, 2017 WL 3575856, at *3.

B.

The Trustee submits the agreement is fair and reasonable and will avoid "lengthy, complex, burdensome and expensive litigation." ECF No. 506 at 11. The Rutan Parties disagree and are adamantly opposed to the settlement. They submit the settlement amount falls well short of *their* perceived value of the estate assets, particularly the assets held within the debtor's IRA. By the settlement, the Trustee is foregoing over $3.8 million in recoverable assets, they contend.

7

Both parties agree that efforts to liquidate the assets contained within the IRA will require extensive litigation.

### III.

The Court agrees with the Trustee's assessment and finds the settlement satisfies the business judgment rule. The points that convince the Court that the settlement should be approved are as follows:

- The bankruptcy case is a chapter 7 liquidation that has been pending now for almost four years.

- The attorneys' fees incurred (and unpaid) to date from litigation over the debtor's claimed exemption and to his receiving a discharge of dischargeable debts have well exceeded $1 million dollars; to the credit of all parties and counsel, they have agreed to severe discounts of fees under the two proposals—the settlement here and the Rutan Parties' $500,000 proposal.

- The anticipated litigation expenses going forward if the Court denies approval of the settlement, and thereby effectively forces the Trustee to pursue further litigation, would be at least $1 million.

- The Trustee has *no funds* with which to pursue further litigation, and the previously approved Litigation Purchase and Funding Agreement specifically *does not* promise the funding of the extensive litigation required for the potential recoveries under the multiple anticipated causes of action.

- The *minimum* recovery to justify further litigation exceeds $2 million—foregoing the $925,000 proposed here and the projected additional fees of $1 million.

- The Trustee solicited offers from companies that specialize in purchasing complex litigation claims but received no viable offers.

- The Rutan Parties provided several examples of transactions whereby properties held directly or indirectly within the trusts of the IRA have been transferred without consideration flowing back to the trusts, but the reported nature of such transactions fails to account for the issues anticipated to arise when considering the broader context of the deals—in short, the Court predicts any actions taken to recover the transfers will be vigorously contested.

- The assets of the IRA include risky notes receivable, the value of which is speculative at best.

- The debtor's (and now the Trustee's) interest in the IRA's assets is, at best, a 49 percent interest; the complications that will no doubt arise from efforts made by a minority interest holder to both capture and then liquidate interests are under appreciated by the Rutan Parties.

- The Trustee has no means *to finance* further litigation. The Rutan Parties have not proposed counsel that would handle the anticipated litigation on a contingency basis.

- The Rutan Parties are, in effect, the sole creditor in this case; this bankruptcy is the rarest of the rare—it is, on its face, a no-asset, simple chapter 7 case that turned into a multi-year slog of litigation. Absent settlement, litigation will continue unchecked.

- The settlement resolves two of three remaining matters in the case—the Exemption Appeal (concerning the IRA) and the Breach of Fiduciary Duty Adversary Proceeding. The third matter, the Discharge Proceeding, which was brought by the Rutans and is also presently on appeal before the District Court, would not be

9

resolved by the settlement because the Rutans are not a party to the settlement. The Trustee's acceptance of the auction bid may net the estate a greater recovery, but it is wholly unclear how it would impact the three pending proceedings or the proposal before the Court. The Court assumes it would not resolve any of the three actions. It would obviously cause further protracted litigation. (Counsel for the Rutan Parties prepared a 90-page draft complaint of such litigation and submitted it in support of the Rutan Parties' objection to the settlement here.)

- The Rutan Parties have had sufficient opportunity to purchase the estate assets themselves or to solicit a third-party purchaser of the assets.

IV.

A.

It is the Trustee's duty to "collect and reduce to money the property of the estate" and to "close such estate as expeditiously as is compatible with the best interests of parties in interest." 11 U.S.C. § 704(a)(1). The sale and settlement agreement as proposed by the Trustee well exceeds the relatively low bar of the business judgment standard for approval. Requiring the Trustee to go forward as demanded by the Rutan Parties would be an abuse of the Court's discretion. The Court has previously noted the overly aggressive and unethical conduct of the Rutan Parties in their efforts to collect on the judgments they hold. *See Rutan v. Johns (In re Johns)*, No. 22-06000, 2024 WL 4314832, at *4 (Bankr. N.D. Tex. Sept. 25, 2024). The Court perceives little capacity on their part to agree to *any* proposal by the Trustee.

B.

The Court finds that the Agreement[3] is the result of an arm's-length bargaining among the Parties and represents a good-faith compromise and resolution of the matters settled. The Agreement is not the product of any collusion among the Parties, nor did the Parties negotiate the Agreement with any intent to prejudice persons or entities subject to the Agreement.

The Court finds that the Agreement is fair, reasonable, and adequate within the parameters established in *In re Cajun Elec. Power Coop., Inc.*, 119 F.3d 349, 355–56 (5th Cir. 1997) (the "*Cajun Electric Factors*"). The Trustee has demonstrated the exercise of prudent business judgment in connection with the Agreement. The Agreement falls well above the lowest point in the range of reasonableness and is in the best interests of the creditors of the debtor's bankruptcy estate.

The sale of all estate assets, other than the Settlement Payment, is appropriate under 11 U.S.C. § 363(f). The Trustee has demonstrated a sound business justification for such sale, and consummation of the sale is in the best interests of the estate and creditors.

The Court finds that the transactions contemplated by the Agreement are undertaken by the Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and that Purchaser is entitled to all the protections afforded by section 363(m) of the Bankruptcy Code.

The Bar Order that is requested is appropriate and has the meaning attributed to it in the Agreement. The Court finds and concludes that (1) all of the claims and causes of action released under the Agreement arise from, are related to, or derive from the debtor or transactions conducted with the debtor; (2) the Bar Order is a mandatory condition of the Agreement, and

---

[3] All capitalized terms have the meaning attributed in the Sale and Settlement Agreement. *See* ECF No. 506, Ex. A.

without the Bar Order, the Agreement will not be consummated because debtor and all other Debtor Released Parties[4] expressly conditioned the Agreement on the entry of this order and debtor would not have entered the Agreement without the Bar Order; (3) entry of this order approving and implementing the Bar Order is necessary and appropriate in order to achieve the finality and repose contemplated by the Agreement, and its entry is an appropriate exercise of the Court's sound discretion to facilitate settlements and promote the consensual resolution of disputes; and (4) the claims and causes of action subject to the Bar Order are property of the bankruptcy estate, subject to the exclusive control of the Trustee, and that no creditor or other party may prosecute them without violating the automatic stay. The Court further finds and concludes that entry of the Bar Order is necessary to preclude further litigation of the aforementioned issues.

V.

The Court approves the settlement and other relief requested by the Trustee. The Court will issue a separate order on the Trustee's motion.

### End of Memorandum Opinion ###

---

[4] The Agreement defines the following as Debtor Released Parties: "Debtor, Dr. Sheen, Ms. Sheen, Austin Sheen, Winston Sheen, Carson Sheen, Ms. Smith, CCT, SEFT, the Sheen Inspira IRAs, and any entity of which any of them are a member, shareholder, beneficiary, or trustee, and including but not limited to, TSU Control, LLC, NFL Control, LP, American Management Trust, A Trust Services Trust, Amerifirst Portalet and Pump Service, LLC, Giving Joy 10-2105 Trust, Okefenokee Charlton Trust, Woodbine Financial Trust, and those trusts listed in Amended Schedule G of Debtor's schedules, and all their heirs, past or present parent entities, subsidiaries, affiliated entities, successors, and assigns, and any and all of their past or present officers, directors, shareholders, agents, attorneys, trustees, insurers, employees, beneficiaries, successors and assigns." *See* ECF No. 506, Ex. A at 5.